**O**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO CABALLERO, | Case No. 2:20-cv-07602-JWH |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER REGARDING PENDING MOTIONS [ECF Nos. 89–94]** |
| FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA, and NORTE DEL VALLE CARTEL, | |
| Defendants, | |
| and | |
| JULIO CESAR ALVAREZ MONTELONGO, | |
| Intervenor. | |

# I.  INTRODUCTION

Plaintiff Anthony Caballero's father—a Colombian politician and diplomat—was kidnapped, tortured, and killed by forces from the Ejercito de Liberacion (the "ELN") and Fuerzas Armadas Revolucionarias de Colombia (the "FARC").[1]  The FARC and the ELN committed those heinous acts to facilitate their distribution of illicit drugs throughout the United States.[2]  FARC forces subsequently threatened Caballero, causing him to abandon his family farm and to flee Colombia.[3]  Caballero successfully sued the ELN in a Florida state court for the abuse that his father suffered, and Caballero received an award of millions of dollars in damages.[4]  Caballero then sued the FARC in the United States District Court for the Southern District of Florida under the Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333, for the FARC's terrorist acts against him.[5]  On May 20, 2020, Caballero prevailed again, and the Southern District of Florida entered judgment in his favor in the amount of $45 million.[6]  This Court now confronts issues pertaining to Caballero's efforts to collect that judgment.

Caballero commenced this enforcement action in August 2020.[7]  A few days later, Caballero moved *ex parte* for a writ of execution pursuant to § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note), for post-judgment execution on the blocked assets of four non-parties:  Julio Cesar Alvarez

---

[1]    *See* Judgment, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-25337 (S.D. Fla. May 20, 2020) (the "ATA Action"), ECF No. 63 (the "ATA Judgment").

[2]    *Id.*

[3]    *Id.*

[4]    *Id.*

[5]    *Id.*

[6]    *Id.*

[7]    *See* Registration of J. from Another District [ECF No. 1].

Montelongo ("Alvarez"); Noryban Productions, S.A. de C.V.; JCAM Editora Musical, S.A. de C.V.; and J.C.A.M. Publishing, LLC.[8]  The Court granted that Application in January 2021.[9]  In doing so, based upon the evidence that Caballero submitted in support of his Application, the Court determined that Alvarez and the other non-parties were "agencies or instrumentalities" of the FARC.[10]  *See* TRIA § 201(a).  Accordingly, the Court directed the Clerk to issue a writ of execution and thereby authorized "Caballero to attach any assets within this Court's jurisdiction in the putative names of, held for the benefit of, or that were blocked due to their association with" Alvarez and the other non-parties.[11]  In March 2021, Alvarez moved to intervene in this action;[12] the Court granted that motion a month later.[13]

Presently before the Court are five motions through which Alvarez seeks the following relief:

- an order dissolving the writ of execution because Caballero has not established that Alvarez is an agency or instrumentality of the FARC;[14]

- an order vacating the Order Re Writ of Execution and dismissing this action because the subject assets are not blocked and because Caballero's judgment is already satisfied;[15]

---

[8]     Pl.'s *Ex Parte* Mot. for Issuance of Post-J. Writ of Execution Pursuant to Section 201(a) of TRIA (the "Application") [ECF No. 6].

[9]     *See* Order Granting the Application (the "Order Re Writ of Execution") [ECF No. 39].

[10]     *See id.* at ¶ 4(b).

[11]     *Id.* at ¶ 6.

[12]     *See* Mot. to Intervene [ECF No. 57].

[13]     *See* Order Granting Mot. to Intervene [ECF No. 75].

[14]     *See* Mot. for Order Dissolving Writ of Execution Because Pl. Has Not Established Alvarez Is an Agency or Instrumentality of the FARC (the "TRIA Motion") [ECF No. 89]; Pl.'s Opp'n to the TRIA Motion (the "TRIA Opposition") [ECF No. 100]; Reply in Supp. of the TRIA Motion (the "TRIA Reply") [ECF No. 105].

[15]     *See* Mot. to Vacate Order Re Writ of Execution and to Dismiss Because Assets Are Not Blocked and J. is Satisfied (the "Motion Re Blocked Assets")

- an order vacating the Order Re Writ of Execution and dismissing this action because the underlying judgment is void;[16]

- an order vacating the Order Re Writ of Execution and dismissing this action for lack of personal jurisdiction and for failure to comply with California law;[17] and

- leave of Court for Alvarez to take reciprocal depositions of Caballero and his witnesses.[18]

Also pending before the Court is a motion by Caballero to compel the deposition of Alvarez in this District.[19]

The Court conducted a hearing on the six pending motions on July 23, 2021. The Court addresses each motion in turn.

## II. DISCUSSION

### A.   Alvarez's Motion Regarding Blocked Assets

TRIA § 201(a) authorizes a terrorism victim to execute upon the "blocked assets" of a terrorist party or its agency or instrumentality. Section 201(a) of TRIA provides:

_____

[ECF No. 90]; Pl.'s Opp'n to the Motion Re Blocked Assets (the "<u>Assets Opposition</u>") [ECF No. 101]; Reply in Supp. of the Motion Re Blocked Assets (the "<u>Assets Reply</u>") [ECF No. 106].

[16]   *See* Mot. to Vacate Order Re Writ of Execution and to Dismiss Because J. is Void (the "<u>Motion Re Judgment</u>") [ECF No. 91]; Pl.'s Opp'n to the Motion Re Judgment (the "<u>Judgment Opposition</u>") [ECF No. 102]; Reply in Supp. of the Motion Re Judgment (the "<u>Judgment Reply</u>") [ECF No. 107].

[17]   *See* Mot. to Vacate Order Re Writ of Execution and to Dismiss for Lack of Personal Jurisdiction and Failure to Comply with Cal. Law (the "<u>Jurisdiction Motion</u>") [ECF No. 92]; Pl.'s Opp'n to the Jurisdiction Motion (the "<u>Jurisdiction Opposition</u>") [ECF No. 103]; Reply in Supp. of the Jurisdiction Motion (the "<u>Jurisdiction Reply</u>") [ECF No. 108].

[18]   *See* Mot. for Leave to Take Reciprocal Deps. (the "<u>Discovery Motion</u>") [ECF No. 93]; Pl.'s Opp'n to the Discovery Motion (the "<u>Discovery Opposition</u>") [ECF No. 104]; Reply in Supp. of the Discovery Motion (the "<u>Discovery Reply</u>") [ECF No. 109].

[19]   *See* Pl.'s Mot. to Compel Alvarez Dep. (the "<u>Motion to Compel</u>") [ECF No. 94]; Opp'n to the Motion to Compel (the "<u>MTC Opposition</u>") [ECF No. 99]; Pl.'s Reply in Supp. of the Motion to Compel (the "<u>MTC Reply</u>") [ECF No. 110].

1    Notwithstanding any other provision of law, and except as provided
2    in subsection (b), in every case in which a person has obtained a
3    judgment against a terrorist party on a claim based upon an act of
4    terrorism, or for which a terrorist party is not immune under
5    section 1605(a)(7) of title 28, United States Code, the blocked assets
6    of that terrorist party (including the blocked assets of any agency or
7    instrumentality of that terrorist party) shall be subject to execution
8    or attachment in aid of execution in order to satisfy such judgment
9    to the extent of any compensatory damages for which such terrorist
10   party has been adjudged liable.

11   Alvarez seeks to dissolve the Writ of Execution and to dismiss this action on the
12   grounds that Alvarez's assets are not "blocked" for the purposes of TRIA and
13   that Caballero's judgment is already satisfied.

14       **1.    "Blocked" Assets**

15       Alvarez concedes that in 2017 the United States Office of Foreign Assets
16   Control ("OFAC") designated Alvarez as a Specially Designated Narcotics
17   Trafficker ("SDNT") pursuant to the Foreign Narcotics Kingpin Designation
18   Act (the "Kingpin Act"), Pub. L. No. 106-120, § 801 *et seq.*, 113 Stat. 1606
19   (codified at 21 U.S.C. §§ 1901 *et seq.*).[20]  However, Alvarez contends that in
20   2017, individuals designated—and assets blocked—under the Kingpin Act did
21   not qualify as "blocked" for the purposes of TRIA.[21]

22       In 2017, when Alvarez was designated as an SDNT under the Kingpin
23   Act, TRIA § 201 defined a "blocked asset" to mean only assets "seized or
24   frozen by the United States under section 5(b) of the Trading With the Enemy
25   Act [Trading Act] . . . or under sections 202 and 203 of the International

26

27   [20]    *See* Motion Re Blocked Assets 3:1–4.
28   [21]    *See id.* at 3:5–18.

-5-

Emergency Economic Powers Act [Economic Powers Act] . . . ."  TRIA § 201(d)(2)(A); *see also Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 915 (11th Cir. 2013) ("*Stansell I*").  In 2018, Congress amended the ATA (the statute upon which Caballero's judgment is based) for the express purpose of redefining the term "blocked asset" to include the assets of a party designated under the Kingpin Act.  Pub. L. No. 115-253, § 3(a), 132 Stat. 3183 (the "2018 Amendment") (codified at 18 U.S.C. § 2333(e)).  As amended, the ATA provides, in pertinent part, the following:

> [F]or purposes of section 201 of the Terrorism Risk Insurance Act of 2002 (28 U.S.C. [§] 1610 note), in any action in which a national of the United States has obtained a judgment against a terrorist party pursuant to this section, the term "blocked asset" shall include any asset of that terrorist party (including the blocked assets of any agency or instrumentality of that party) seized or frozen by the United States under section 805(b) of the Foreign Narcotics Kingpin Designation Act (21 U.S.C. [§] 1904(b)).

18 U.S.C. § 2333(e).  Congress further established that the 2018 Amendment "shall apply to any judgment entered before, on, or after the date of enactment of this Act."  2018 Amendment § 3(b).

Alvarez does not meaningfully contest the plain language of the 2018 Amendment or the fact that Congress expressly stated its intent for the 2018 Amendment to apply retroactively to judgments previously obtained under the ATA.[22]  Indeed, in view of the plain text of the 2018 Amendment, Alvarez's assets, which were "blocked" after Alvarez was designated under the Kingpin Act, are subject to execution under TRIA.  In this regard, however, Alvarez

---

[22]  *See id.* at 3:19–22; Assets Reply 1:23–2:14 ("The fact that Congress intended the law to apply retroactively does not cure the Ex Post Facto problem, it gives rise to that problem.").

1   contends that the application of the 2018 Amendment to his assets would violate

2   the *Ex Post Facto* Clause of the United States Constitution, Art. I, § 10, cl. 1.[23]

3    The *Ex Post Facto* Clause of the Constitution "flatly prohibits retroactive

4   application of penal legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266

5   (1994). It "not only ensures that individuals have 'fair warning' about the effect

6   of criminal statutes, but also 'restricts governmental power by restraining

7   arbitrary and potentially vindictive legislation.'" *Id.* at 266–267 (quoting *Weaver*

8   *v. Graham*, 450 U.S. 24, 28–29 (1981) (citations omitted)). However, as the

9   Supreme Court has recognized, the Clause's restrictions "are of limited scope."

10  *Id.* at 267. "Retroactivity provisions often serve entirely benign and legitimate

11  purposes, whether to respond to emergencies, to correct mistakes, to prevent

12  circumvention of a new statute in the interval immediately preceding its passage,

13  or simply to give comprehensive effect to a new law Congress considers

14  salutary." *Id.* at 267–268. The *Ex Post Facto* Clause thus applies only to civil

15  statutes that are "so punitive in either purpose or effect as to negate [Congress']

16  intention to deem it civil." *Smith v. Doe*, 538 U.S. 84, 92 (2003) (internal

17  quotations omitted). Here, Alvarez contends that 18 U.S.C. § 2333 is punitive

18  in nature and, therefore, that the retroactive application of the 2018 Amendment

19  to Alvarez's blocked assets would violate the *Ex Post Facto Clause*. The Court is

20  not persuaded.

21   Alvarez focuses his argument on the treble damages provision of the

22  ATA, 18 U.S.C. § 2333(a), which Alvarez contends is "overwhelmingly

23  punitive."[24] That argument, however, misses the mark. The ATA establishes a

24  claim for relief for victims of terrorism ***against foreign terrorist organizations***.

25  *See* 18 U.S.C. § 2333(a) & (d)(2). Caballero is not seeking a judgment (or treble

26

27  ----

[23] *See* Motion Re Blocked Assets 3:19–6:10.

28  [24] *Id.* at 4:14–15 (quoting *Estates of Ungar v. Palestinian Auth.*, 304
F. Supp. 2d 232, 238 (D.R.I. 2004).

1   damages) against Alvarez—he is seeking only to ***enforce*** and collect upon the

2   ATA judgment that he previously obtained against the FARC, a designated

3   foreign terrorist organization.  Thus, 18 U.S.C. § 2333(a) is only peripherally

4   relevant here.  Moreover, the TRIA does not shift "liability from a terrorist

5   party to its instrumentality."  *Bennett v. Islamic Republic of Iran*, 927 F. Supp. 2d

6   833 (N.D. Cal. 2013), *aff'd*, 799 F.3d 1281 (9th Cir. 2015), *opinion withdrawn and*

7   *superseded*, 817 F.3d 1131 (9th Cir. 2016), and *aff'd*, 817 F.3d 1131 (9th Cir. 2016),

8   and *aff'd*, 825 F.3d 949 (9th Cir. 2016).  In this regard, 18 U.S.C. § 2333(e)

9   merely defines the category of assets that are executable; it does not determine

10  liability.  Accordingly, to the extent that the ATA is punitive, its punitive

11  provisions do not apply to Alvarez.  And 18 U.S.C. § 2333(e), specifically, is not

12  "so punitive in either purpose or effect as to negate [Congress'] intention to

13  deem it civil."  *Smith*, 538 U.S. at 92.

14      In sum, the Court concludes that Alvarez's assets are "blocked" pursuant

15  to 18 U.S.C. § 2333(e) and that the application of the 2018 Amendment to

16  Alvarez's assets does not violate the *Ex Post Facto* Clause.

17      **2.   Satisfaction of Caballero's Judgment**

18      Caballero admits that he has collected more than $11 million in damages;[25]

19  Alvarez regards that sum as excessive.  Alvarez argues that Caballero is entitled

20  to collect upon his judgment for "actual compensatory, and economic

21  damages," in the amount of only $5,189,001.[26]  The remainder of the judgment,

22  including the award of $45 million for "non-economic damages," according to

23  Alvarez, is void because no "U.S. National" was ever "injured in his or [*sic*]

24  person."[27]  This argument is closely related to Alvarez's argument in his

25  separate motion regarding the ATA Judgment, in which Alvarez argues that the

---

25   Assets Opposition 20:19-20.

26   *See* Motion Re Blocked Assets 8:1–8.

27   *See id.* at 8:9–17.

ATA Judgment is void and unenforceable.  For the reasons discussed in more detail below, the Court concludes that Alvarez's attack on the validity of the ATA Judgment is without merit.  Putting that issue aside for the moment, in his instant motion, Alvarez does not cite any authority or evidence in support of his argument that Caballero is entitled to collect only the $5,189,001 in damages awarded for actual compensatory and economic damages, nor is there any support for that argument under the plain text of either 18 U.S.C. § 2333(a) or TRIA § 201(a).  Accordingly, the Court is not persuaded that Caballero's ATA Judgment is satisfied or that the ATA Judgment is unenforceable against Alvarez's blocked assets.[28]

For the foregoing reasons, the Court **DENIES** Alvarez's Motion Re Blocked Assets in its entirety.

**B.      Alvarez's Motion Re Judgment**

The Federal Rules of Civil Procedure provide that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void."  Fed. R. Civ. P. 60(b)(4).  A judgment may be set aside on voidness grounds under Rule 60(b)(4) "only if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or if the court acted in a manner inconsistent with due process of law."  *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985).

Alvarez contends that the ATA Judgment is void because the Southern District of Florida lacked both subject matter jurisdiction over the action and personal jurisdiction over the defendants.

---

[28]     The Court's ruling on this point is subject, of course, to its final determination of whether Alvarez is an agency or instrumentality of the FARC, which the Court addresses in the final section of this Order.

### 1.      Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  "The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1" of the United States Constitution, and the jurisdiction "of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by Constitution and statute").  "[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception"; thus, courts of the United States must deny their jurisdiction "in all cases where such jurisdiction does not affirmatively appear in the record."  *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

Alvarez contends that the Southern District of Florida lacked subject matter jurisdiction because, under the plain language of 18 U.S.C. § 2333(a), Caballero did not qualify as a victim of international terrorism.[29]  That argument, however, is not jurisdictional.  The jurisdictional provision of the ATA, 18 U.S.C. § 2338, provides that federal district courts have exclusive jurisdiction over claims under the ATA.  It was through that statutory provision that Caballero invoked the federal court's subject matter jurisdiction in the

---

[29]      *See* Motion Re Judgment 7:3–13:11.  Alvarez does not appear to challenge the validity of the prior judgment entered in Caballero's action in Florida state court.  Even if he did, Rule 60(b)(4) does not allow a federal-court litigant "to raise an untimely argument that the state-court orders and final judgments are void, essentially asking this court to sit as an appellate court over those orders and judgment."  *Mather v. First Hawaiian Bank*, 2014 WL 7334880, at *3 (D. Haw. Dec. 19, 2014).  In other words, Rule 60(b)(4) does not authorize this Court to vacate as void state court orders or judgments.  *Id.*; *see also Schroeder v. Bank of Am.*, 2012 WL 6929272, at *4 (M.D. Pa. Nov. 19, 2012) (same).

underlying action.[30]  To that end, it is well-established law that the "presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

By focusing on 18 U.S.C. § 2333, Alvarez effectively argues that Caballero failed to state a claim in the underlying action.  However, that alleged defect does not relate to whether the federal court had subject matter jurisdiction over that claim in the first instance.  That is an important distinction in the context of Rule 60(b)(4)—a judgment is not void merely because it is somehow erroneous.  *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).  As relevant here, 18 U.S.C. § 2333(a) provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States . . . ."  While that provision does have a jurisdictional component—"may sue therefor in any appropriate district court of the United States"—that jurisdictional component merely confirms what is plainly set forth in 18 U.S.C. § 2338:  federal district courts have exclusive jurisdiction over claims brought pursuant to the ATA.  *See* 18 U.S.C. §§ 2333(a) & 2338.

Alvarez's argument—that Caballero did not qualify to assert a claim under the ATA because neither Caballero nor his father was a U.S. national at the time that his father was tortured and killed—is not persuasive.[31]  As the

---

[30]    *See* Pl.'s Compl. (the "ATA Complaint") [ATA Action, ECF No. 1] ¶ 9 ("This Court has jurisdiction pursuant to 18 U.S.C. § 2338, which provides for exclusive federal jurisdiction for ATA claims."); *see also id.* at ¶ 8 ("Plaintiff in this action sues Defendants for damages pursuant to 18 U.S.C. § 2333 of the ATA."); *id.* at ¶¶ 12–14 (pleading claim for relief under 18 U.S.C. § 2333).

[31]    *See* Motion Re Judgment 8:12–10:15.

court in the ATA Action correctly observed, 18 U.S.C. § 2333(a) "does not explicitly require that the claimant be a U.S. national at the time of the injury, only that he is currently a U.S. national and that he was injured by an act of international terrorism at some time in the past."[32]  *See, e.g.*, *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005) (holding that "U.S. citizens suing for various non-physical injuries, such as emotional distress and loss of consortium, after their family members, who were not U.S. nationals, became victims of acts of international terrorism" could assert a claim under the ATA); *Biton v. Palestinian Interim Self–Government Authority*, 310 F. Supp. 2d 172, 181–82 (D.D.C. 2004) (holding that a woman whose husband (a non-U.S. citizen) died in a Gaza Strip bus bombing could maintain an ATA lawsuit even though she was not personally on the bombed bus nor injured in the blast); *Weinstock v. Islamic Republic of Iran*, 2019 WL 1993778, at *4 (S.D. Fla. May 6, 2019). Moreover, even if the statute did require Caballero to be a U.S. national at the time of his injury, as Alvarez argues, Caballero explicitly alleged a continuing injury in his person by reason of the acts of international terrorism.[33]  Thus, even accepting Alvarez's interpretation of the statute, a federal question appears on the face of Caballero's well-pleaded ATA Complaint.  *See Caterpillar*, 482 U.S. 392.

Therefore, the Southern District of Florida had subject matter jurisdiction over the ATA Action.

### 2.    Personal Jurisdiction

Alvarez next argues that the ATA Judgment is void because the district court did not have personal jurisdiction over the defendants.[34]  Unlike subject

---

[32]    Order on Mot. for Default J. (the "Default Order") [ATA Action, ECF No. 62] 5.

[33]    *See* ATA Complaint ¶ 14.

[34]    *See* Motion Re Judgment 13:12–23:7.

matter jurisdiction, which "is an Art. III as well as a statutory requirement" that "functions as a restriction on federal power," the "requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause." *Ins. Corp. of Ireland*, 456 U.S. at 702.  As such, the "personal jurisdiction requirement recognizes and protects an ***individual*** liberty interest." *Id.* (emphasis added).  It therefore "represents first of all an individual right," and, like other such rights, it can be waived.  *Id.* at 703.

Alvarez was not a defendant in the ATA Action.  Because the requirement of personal jurisdiction is "a legal right protecting the individual," *id.* at 704, other district courts in this circuit and elsewhere have held that objections to personal jurisdiction can be raised only by the individual defendant who is protected by that right, *see, e.g.*, *Verrecchia v. Aviss*, 2017 WL 9486151, at *3–*4 (C.D. Cal. Nov. 8, 2017) (co-defendant did not have standing to object to personal jurisdiction over another defendant); *Jenkins v. Smead Mfg. Co.*, 2009 WL 3628100, at *3 (S.D. Cal. Oct. 28, 2009) (same); *In re Grana y Montero S.A.A. Sec. Litig.*, 2019 WL 259778, at *3 (E.D.N.Y. Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019); *Zhaoyin Wang v. Beta Pharma, Inc.*, 2015 WL 5010713, at *12 (D. Conn. Aug. 24, 2015) (collecting cases); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010) ("[c]o-defendants do not have standing to assert improper service claims on behalf of other defendants," citing *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties.")).

In this regard, Alvarez cites no authority to show that he has standing to attack the ATA Judgment for lack of personal jurisdiction over the named defendants in the ATA Action.  Therefore, the Court concludes that Alvarez

1  lacks standing to object to personal jurisdiction on behalf of the named

2  defendants in the ATA Action.

3       For the foregoing reasons, the Court **DENIES** Alvarez's Motion Re

4  Judgment in its entirety.

5  **C.   Alvarez's Jurisdiction Motion**

6       Through this motion, Alvarez seeks to dissolve the Writ of Execution

7  because Caballero has not established that this Court has personal jurisdiction

8  over Alvarez and because Caballero failed to comply with the relevant notice

9  requirements under California law.  The thrust of Caballero's response is that he

10  does not have to establish personal jurisdiction over Alvarez because this is a

11  post-judgment collection proceeding against the blocked assets that are located

12  in this district, not Alvarez personally.  Caballero also contends that he complied

13  with all applicable notice requirements under California law.

14       **1.   Requirements Under California Law**

15       The Federal Rules of Civil Procedure provide that a money judgment is

16  "enforced by a writ of execution . . . ."  Fed. R. Civ. P. 69(a)(1).  That Rule

17  further instructs that the procedure on execution "must accord with the

18  procedure of the state where the court is located . . . ."  *Id.*  Thus, here,

19  California law governs the procedure on execution.  Alvarez previously argued

20  that the term "execution," in the context of this case, was being misapplied

21  based upon (1) the manner in which that term was used by the Eleventh Circuit

22  in *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, 771 F.3d 713 (11th

23  Cir. 2014) ("*Stansell II*"), with reference to Florida law; and (2) how that term

24  is used in the context of the California Code of Civil Procedure.[35]

25

26

---

27  [35]   *See generally Ex Parte* Appl. by Alvarez to Stay Execution Against His
Assets (the "Application") [ECF No. 58]; *see also* Objection in Supp. of the

28  Appl. (the "Alvarez Objection") [ECF No. 63] 2:1–3:25.

In *Stansell II*, under Florida law, "execution" was synonymous with "turnover" of blocked assets to the judgment creditor. *See Stansell II*, 771 F.3d at 725–26. In contrast, under California law, a "Writ of Execution" is the exclusive vehicle for the enforcement of a judgment, *see generally* Cal. Civ. Proc. Code §§ 680.010–720.430, whereas a "Writ of Attachment" is used in the pre-judgment context (in cases involving commercial law), *see id.* at §§ 481.010, *et seq.*; *see also Writ of Execution*, Cal. Prac. Guide Enf. J. & Debt Ch. 6D-2 [6:311] (May 2020 update).

The parties agree that the "procedure on execution" must accord with the procedures used in California.[36] Under California law, post-judgment collection procedure, such as Caballero's action before this Court, is set forth in Title Nine of the Code of Civil Procedure: "Enforcement of Judgments Law." *See* Cal. Civ. Proc. Code § 680.010 ("This title shall be known and may be cited as the Enforcement of Judgments Law."). Enforcement of money judgments is accomplished through the service of a Writ of Execution and Notice of Levy. *See id.* at § 699.510–540. Such writs may be served on third persons. *Id.* at § 701.010(a). That is the procedure that Caballero employed in this case.[37] Upon receiving service of a Writ of Execution, a third person has an obligation to "deliver to the levying officer any of the property levied upon that is in the possession or under the control of the third person at the time of levy unless the third person claims the right to possession of the property." *See* Cal. Civ. Proc. Code § 701.010(b)(1). The Notice of Levy that Caballero served with the Writ of Execution confirms as much, regardless of whether the Writ

---

[36] *See* Pl.'s *Ex Parte* Mot. to Strike the Alvarez Objection (the "Motion to Strike") [ECF No. 64].

[37] *See* Pl.'s *Ex Parte* Mot. for Issuance of Post-J. Writ of Execution Pursuant to Section 201(a) of TRIA [ECF No. 6] 13–14; Proof of Service [ECF No. 43-1] 35.

1 and Notice are served on a defendant or a third party.[38]  Accordingly, Caballero
2 complied with the applicable provisions of California law.  Furthermore,
3 Alvarez's intervention in this case confirms that he received notice of this
4 action.

5 **2.  Types of Jurisdiction**

6 At the outset, it is helpful to understand the distinctions between the
7 three types of potential jurisdiction in federal cases:  *in personam*, *in rem*, and
8 *quasi in rem.*

9 **a.  *In Personam* Jurisdiction**

10 "*In personam* jurisdiction, simply stated, is the power of a court to enter
11 judgment against a person."  *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).
12 As noted in the preceding section, the "requirement that a court have personal
13 jurisdiction" flows from the Due Process Clause.  *Ins. Corp. of Ireland*, 456 U.S.
14 at 702.  It is "a legal right protecting the individual."  *Id.* at 704.

15 **b.  *In Rem* Jurisdiction**

16 *In rem* jurisdiction, by contrast, "is the court's power to adjudicate rights
17 over property."  *United States v. Obaid*, 971 F.3d 1095, 1098 (9th Cir. 2020)
18 (citing *Ross*, 504 F.3d at 1138).  "Jurisdiction *in rem* is predicated on the fiction
19 of convenience that an item of property is a person against whom suits can be
20 filed and judgments entered . . . ."  *United States v. Approximately $1.67 Million*
21 *(US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991, 996 (9th Cir. 2008)
22 (citation and internal quotation marks omitted).

23 **c.  *Quasi in Rem* Jurisdiction**

24 Finally, a *quasi in rem* action falls in between *in rem* and *in personam*
25 jurisdiction:

26

27 [38]  *See* Notice of Levy [ECF No. 54] 2 (sections entitled "Information for
28 Judgment Debtor" and "Information for Person Other than Judgment
Debtor").

-16-

The action is not really against the property; rather, the action involves the assertion of a personal claim against the defendant of the type usually advanced in an *in personam* action and the demand ordinarily is for a money judgment, although in some contexts the objective may be to determine rights in certain property. The basis for transforming the suit from one *in personam* to an action against the defendant's property is the attachment or garnishment of some or all of the property the defendant may have in the jurisdiction.

*Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 860 n.4 (9th Cir. 2005), *as amended* (citations and alteration omitted).

There are two types of *quasi in rem* jurisdiction. "In the first type the plaintiff asserts an interest in property and seeks to have his interest established as against the claim of a designated person or designated persons." Restatement (First) of Judgments § 32 cmt. a (1942). The first type includes, for example, actions to recover possession of land or to quiet title. *See id.*

"In the second type of proceeding *quasi in rem* the plaintiff does not assert that he has an interest in the property, but asserts a claim against the defendant personally, and seeks to compel to the satisfaction of his claim the application of property of the defendant, by attachment or garnishment." *Id.*; *see also Off. Depot Inc. v. Zuccarini*, 596 F.3d 696, 699–700 (9th Cir. 2010). Type two *quasi in rem* is sometimes called "attachment jurisdiction." *Zuccarini*, 596 F.3d at 699.

A district court can obtain *quasi in rem* jurisdiction over property situated within its geographical borders. *See Pennington v. Fourth Nat'l Bank*, 243 U.S. 269, 272 (1917); Fed. R. Civ. P. 4(n)(2) ("[T]he court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district."). Due process is satisfied when there is a constitutionally sufficient relationship between the defendant, the forum, and the litigation.

1  *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).  "In an action to execute on a

2  judgment, due process concerns are satisfied, assuming proper notice, by the

3  previous rendering of a judgment by a court of competent jurisdiction."

4  *Zuccarini*, 596 F.3d at 700 (citing *Shaffer*, 433 U.S. at 210 n.36 ("Once it has

5  been determined by a court of competent jurisdiction that the defendant is a

6  debtor of the plaintiff, there would seem to be no unfairness in allowing an action

7  to realize on that debt in a State where the defendant has property, whether or

8  not that State would have jurisdiction to determine the existence of the debt as

9  an original matter.")).

10      **3.      Application to This TRIA Case**

11          Because TRIA establishes a unique procedure for post-judgment

12  execution and attachment proceedings, this case does not fit neatly within any of

13  the traditional jurisdictional paradigms.  Indeed, the parties do not cite any case

14  addressing the specific jurisdictional basis for post-judgment execution

15  proceedings under TRIA, nor has the Court discovered any such authority

16  through its independent research.  Thus, this case appears to present an issue of

17  first impression.  Here, although Alvarez was not named as a defendant in the

18  ATA Action and Caballero does not assert a claim against Alvarez personally,

19  the plain language of TRIA mandates that the Court's jurisdiction over this

20  post-judgment collection proceeding is type two *quasi in rem*.

21          In view of the traditional *quasi in rem* framework, the issue that stands out

22  here is that Alvarez was not a defendant against whom the ATA judgment was

23  entered.  The bridge to that gap, however, is found in the plain text of TRIA,

24  which provides, in relevant part, as follows:

25          Notwithstanding any other provision of law, and except as provided

26          in subsection (b), in every case in which a person has obtained a

27          judgment against a terrorist party on a claim based upon an act of

28          terrorism, or for which a terrorist party is not immune under

-18-

section 1605(a)(7) of title 28, United States Code, the blocked assets

of that terrorist party (***including the blocked assets of any agency or***

***instrumentality of that terrorist party***) shall be subject to execution

or attachment in aid of execution in order to satisfy such judgment

to the extent of any compensatory damages for which such terrorist

party has been adjudged liable.

TRIA § 201(a) (emphasis added).

In the underlying ATA Action, judgment was entered against the FARC.

It is undisputed that the FARC is a "terrorist party" as defined by TRIA

§ 201(d)(4), and it is further undisputed that Alvarez's assets are "blocked"

under the Kingpin Act.  This Court has, therefore, concluded that Alvarez's

assets are subject to execution pursuant to 18 U.S.C. § 2333(e).[39]  Accordingly,

the only issue remaining is whether Alvarez is an agency or instrumentality of

the FARC for the purposes of TRIA § 201(a).  The Court already made a

preliminary determination that Alvarez is an agency or instrumentality of the

FARC,[40] although that determination is currently pending further proceedings,[41]

as discussed below.  Subject to the Court's final determination of that issue,

however, the plain language of TRIA § 201(a) makes clear that "in *every* case in

which a person has obtained a judgment against *a terrorist party* . . . , the blocked

assets of that terrorist party (*including* the blocked assets of *any agency or*

*instrumentality of that terrorist party*) shall be subject to execution or attachment

. . . ."  *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010)

(emphasis in original).  Under Alvarez's interpretation of the statute—that the

court in the ATA Action first had to have personal jurisdiction over Alvarez

(*i.e.*, the alleged agency or instrumentality) before this Court can properly

---

[39]     *See* Sec. II(A)(1), *supra*.

[40]     *See* Order Re Writ of Execution ¶ 4(b).

[41]     *See* TRIA Motion.

1    exercise *quasi in rem* jurisdiction over this action[42]— "the agency or
2    instrumentality would itself have been a 'terrorist party' against which the
3    underlying judgment had been obtained" and "the parenthetical language in
4    Section 201(a) of the TRIA that permits attachment of funds from agencies and
5    instrumentalities would be rendered superfluous." *Id.*

6          Instead, the plain language of the statute "clearly differentiates between
7    the party that is the subject of the underlying judgment itself, which can be any
8    terrorist party . . . , and parties whose blocked assets are subject to execution or
9    attachment, which can include not only the terrorist party but also 'any agency
10   or instrumentality of that terrorist party.'" *Id.* (quoting TRIA § 201(a)).  In
11   effect, TRIA § 201(a) constitutes an independent grant of jurisdiction over the
12   blocked assets of "any agency or instrumentality" of the terrorist party for the
13   purpose of execution and attachment of a valid ATA judgment.  Due process is
14   satisfied by the underlying judgment against the terrorist party as well as the
15   requirement under TRIA § 201(a) that the blocked assets subject to execution
16   are the assets of an agency or instrumentality of the terrorist party.  Of course, if
17   the Court were to decide that Alvarez is not an agency or instrumentality of the
18   FARC, then the jurisdictional question would be moot.

19         By way of analogy, the Court's conclusion finds support in cases where a
20   creditor seeks to satisfy its debt out of property transferred by one corporation
21   (the original judgment debtor) to a second, successor corporation.  In those
22   cases, the district court applies state law to determine whether the transferee
23   corporation is merely a successor to, and continuation of, the former
24   corporation.  *See Christiansen v. Mechanical Contractors Bid Depository*, 404 F.2d
25   324, 325 (10th Cir. 1968), *cited with approval in In re Merrill Lynch Relocation
26   Mgmt., Inc.*, 812 F.2d 1116, 1120 (9th Cir. 1987) (in actions to enforce a judgment

27

28   [42]    *See* Jurisdiction Motion 10:8–28.

under Rule 69, state law applies to determine liability of a successor corporation).  If the court finds that the transferee corporation is the successor to the transferor corporation and that state law imposes liability upon a successor corporation for the transferor's debts, then the judgment creditor can execute upon the assets of the successor corporation, notwithstanding that the successor corporation is not the judgment debtor in the underlying action.  *See id.*  Similarly, here, TRIA § 201(a) provides that the judgment creditor may, upon a proper showing, satisfy his judgment against the blocked assets of any agency or instrumentality of the terrorist-party judgment debtor.  The agency or instrumentality is an analog to the successor corporation in the aforementioned example.  Due Process is satisfied because the agency-or-instrumentality finding establishes a relationship with the judgment debtor and the underlying litigation, and with the forum where the blocked assets of the agency or instrumentality are located.  *See Shaffer*, 433 U.S. at 204.

Courts have also adopted similar reasoning in examining the basis for federal subject matter jurisdiction over actions to enforce a judgment obtained against a foreign state under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*  While this Court recognizes that there are important distinctions between the instant action and actions against a foreign state under FSIA,[43] the analytical framework in the FSIA context is instructive with regard to the issue presently before this Court.

Like TRIA, FSIA contains provisions requiring an "agency or instrumentality" determination.  Specifically, the statute's definition of the term "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a).  Based upon that language, courts have held that Rule 69 authorizes a garnishment action against

---

[43]   Those distinctions include issues of subject matter jurisdiction over the action and jurisdiction over individuals and their assets (as Alvarez argues here).

-21-

the assets of an agency or instrumentality of the judgment debtor.  *See, e.g.*, *IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298 (3d Cir. 2006); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019).  In *IFC*, for example, the Third Circuit reasoned that "[a]lthough garnishment actions are new actions in the sense that there is a new party and a new theory for that party's liability, they are not new actions in the sense of a new direct claim." *IFC*, 438 F.3d at 314.  Applying *IFC*, the district court in *Crystallex* determined that the judgment creditor's collection action against a Venezuelan state-owned oil company to collect on the creditor's judgment against the Bolivarian Republic of Venezuela was part of the action giving rise to the judgment and that Venezuela was subject to the court's jurisdiction under an exception to FSIA. *See Crystallex*, 333 F. Supp. 3d at 390–392.  That court reasoned that the collection action was part of the "same lawsuit" that gave rise to the judgment and that the judgment creditor did not seek to impose any new obligation on the agency or instrumentality, but rather sought only to attach property that nominally belonged to the agency or instrumentality but effectually belonged to the judgment debtor.[44]  *See id.* at 392.  The court in *Crystallex* proceeded to explain that the crucial distinction in such cases is that the judgment creditor seeks only to collect a judgment, not "to impose personal liability for an existing judgment on a new party."  *See id.* at 393 (quoting *Gambone v. Lite Rock Drywall*, 288 Fed. App'x 9, 12 (3d Cir. 2008)); *see also id.* at 392–393 (citing cases).

---

[44]    Although Alvarez's argument in the instant action is somewhat different—Alvarez is contesting this Court's jurisdiction over him and his assets, and Caballero does not appear to contend that Alvarez is an alter ego of the FARC, *cf. Crystallex*, 333 F. Supp. 3d at 390–392—as this Court explained, TRIA § 201(a) effectively constitutes an independent grant of jurisdiction over the blocked assets of "any agency or instrumentality" of the terrorist party for the purpose of execution and attachment of a valid ATA judgment.  The arguments and analysis are, thus, very similar.

As in those FSIA cases, here Caballero is not seeking to impose personal liability against Alvarez; Caballero seeks only to enforce his judgment against Alvarez's blocked assets based upon the theory that Alvarez is an agency or instrumentality of the FARC.  Thus, Due Process is satisfied by the underlying judgment and by the implicit requirement under TRIA that the Court make a finding that Alvarez is an agency or instrumentality of the judgment debtor before Caballero can obtain the turnover of Alvarez's blocked assets.

Accordingly, the Court concludes that it has *quasi in rem* jurisdiction over this action, pending a final determination of whether Alvarez is an agency or instrumentality of the FARC.

Therefore, for the foregoing reasons, the Court **DENIES** Alvarez's Jurisdiction Motion in its entirety.

### D.     Discovery Motions

Caballero and Alvarez each filed separate, but related, motions pertaining to discovery in this action.  The Court addresses them in that order.

#### 1.     Caballero's Motion to Compel

Caballero seeks an order compelling Alvarez to provide a deposition in person in this District.[45]  Caballero contends that absent an order compelling Alvarez to appear for a deposition in this District, Caballero "would be deprived of one of the strongest weapons in this Court's arsenal to punish perjury—that is, the risk of arrest."[46]  Alvarez objects only to the extent that Caballero seeks to depose Alvarez outside of Mexico.[47]  Because Alvarez is a designated SDNT, he cannot obtain a visa to travel to the United States.[48]  Moreover, Alvarez

---

[45]     *See generally* Motion to Compel.

[46]     *Id.* at 7:17–21.

[47]     MTC Opposition 1:11–12.

[48]     *See id.* at 1:12–2:3 & 3:24–4:25.

contends that the Federal Rules of Civil Procedure expressly allow for foreign depositions.[49]

The Federal Rules of Civil Procedure provide as follows:

(1) *In General.* A deposition may be taken in a foreign country:

(A) under an applicable treaty or convention;

(B) under a letter of request, whether or not captioned a "letter rogatory";

(C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; or

(D) before a person commissioned by the court to administer any necessary oath and take testimony.

Fed. R. Civ. P. 28(b)(1). The Rules further provide that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4).

The Court does not share Caballero's concern that unless Caballero takes Alvarez's deposition in person, in the Central District, Caballero "would be deprived of one of the strongest weapons in this Court's arsenal to punish perjury—that is, the risk of arrest."[50] District courts routinely handle cases in which depositions are taken remotely, outside of the district. The Court is also concerned that if it grants Caballero's Motion to Compel, it would create a situation in which Alvarez's inevitable failure to appear in this District would lead to Alvarez's loss of the agency-or-instrumentality determination by default, rather than on the merits.

In view of those Rules, the Court concludes that Caballero may depose Alvarez, in person or remotely, at an appropriate venue in Mexico.

---

[49]   *See id.* at 5:1–8:22.

[50]   *Id.* at 7:17-21.

Accordingly, the Court **GRANTS** the Motion to Compel **in part**, to the extent that Caballero seeks to compel the Alvarez's deposition, and **DENIES** the motion **in part**, to the extent that Caballero seeks to compel Alvarez to appear in person in this District for his deposition.  The Court **DIRECTS** the parties to meet and confer regarding the timing, sequence, and other logistics pertaining to Alvarez's deposition.

### 2.    Alvarez's Discovery Motion

Alvarez seeks an order compelling reciprocal depositions of Caballero and Caballero's witnesses.[51]  Caballero opposes that motion only to the extent that Alvarez seeks to take Caballero's deposition.[52]

The Federal Rules of Civil Procedure provide, in pertinent part, as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  The Court is required to limit "the frequency or extent of discovery" if it determines that:

---

[51]    *See generally* Discovery Motion.

[52]    *See* Discovery Opposition 2:19–3:27.

(i) the discovery sought is unreasonably cumulative or duplicative,
or can be obtained from some other source that is more convenient,
less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain
the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by
Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Here, in view of the Court's other rulings herein, and for the reasons set forth in the subsequent section, it appears that there is no testimony that Caballero could provide that would be relevant to the determination of whether Alvarez is an agency or instrumentality of the FARC. Therefore, the Court finds that Caballero's testimony is not relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Accordingly, pursuant to Rule 26(b)(2)(C)(3), the Court finds that Alvarez is not entitled to take Caballero's deposition.

For those reasons, the Court **GRANTS** the Discovery Motion **in part**, to the extent that Alvarez seeks to take reciprocal depositions of Caballero's witnesses regarding the agency-or-instrumentality issue, and **DENIES** the Discovery Motion **in part**, to the extent that Alvarez seeks to take Caballero's deposition. The Court further **ORDERS** that Caballero shall have the right to depose Alvarez's witnesses regarding the agency-or-instrumentality issue. The Court **DIRECTS** the parties to meet and confer regarding the timing, sequence, and other logistics for that discovery.

### E. Alvarez's TRIA Motion

In view of the foregoing, after discovery is completed, the Court will conduct an evidentiary hearing on the TRIA Motion. At the hearing on the pending motions, the parties renewed their respective requests for the Court to

-26-

decide the applicable legal standard for the agency-or-instrumentality determination.  Alvarez contends that, because TRIA does not have its own definition of "agency or instrumentality" and because TRIA § 201 is codified as a note to 28 U.S.C. § 1610, the Court should apply the FSIA definition of "agency or instrumentality," 28 U.S.C. § 1603(b), which applies to the entire "chapter" including 28 U.S.C. § 1610, *see* 28 U.S.C. § 1603 ("For purposes of this chapter . . .").[53]  In contrast, Caballero urges this Court to apply the so-called "Assistance Standard" adopted by the Eleventh Circuit in *Stansell II*, which Caballero contends is supported by the plain text of TRIA § 201(a). The Court regards those requests as motions *in limine* pertaining to the upcoming evidentiary hearing and, accordingly, provides its guidance below.

Alvarez correctly observes that TRIA § 201(a) is codified as a note to 28 U.S.C. § 1610 and that the FSIA definition of "agency or instrumentality" applies to 28 U.S.C. § 1610.  In a typical case involving a question of statutory interpretation, the Court's analysis would end there.  However, "[s]tatutory construction is a 'holistic endeavor.'"  *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988)). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n*, 484 U.S. at 371.  Here, importing the FSIA definition into TRIA § 201 is inconsistent with the plain text of both statutes, and such an importation would produce an anomalous result that is incompatible with the plain language of the statute.

---

[53]    TRIA Motion 13:3–12.

The ambiguity arises in the first instance from Congress's decision to codify TRIA § 201(a) as a "note" to 28 U.S.C. § 1610 instead of an amendment to that section.  In other words, TRIA § 201(a) is an independent enactment separate from the statutory text of 28 U.S.C. § 1610.  In making that legislative decision, Congress appears to have recognized that although the two statutes are related in a general sense (*i.e.*, both statutes have a similar purpose), they are directed at different subjects.  The plain text of the respective statutes makes that distinction crystal clear.

FSIA concerns the activities of "foreign states" (*i.e.*, sovereign countries, *see Stansell II*, 771 F.3d at 732) and the agencies or instrumentalities of those foreign states.  *See* 28 U.S.C. § 1603(a).  Regarding the latter, FSIA provides, in relevant part, as follows:

> An "agency or instrumentality ***of a foreign state***" means any entity—
>
> > (1) which is a separate legal person, corporate or otherwise, and
> >
> > (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> >
> > (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b) (emphasis added).  In contrast, the subject of TRIA § 201(a) is a "terrorist party," and TRIA's definition of that term unambiguously includes both state and non-state actors:

> The term "terrorist party" means a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and

1   Nationality Act (8 U.S.C. [§] 1182(a)(3)(B)(vi))), or a foreign state

2   designated as a state sponsor of terrorism under section 6(j) of the

3   Export Administration Act of 1979 (50 U.S.C. App. [§] 2405(j)) or

4   section 620A of the Foreign Assistance Act of 1961 (22 U.S.C.

5   [§] 2371).

6   TRIA § 201(d)(4).

7       Alvarez contends that the distinction between "foreign state" in FSIA

8   and "terrorist party" in TRIA § 201(a) is trivial and, therefore, that this Court

9   should simply substitute "foreign state" with "terrorist party."[54] However,

10  "our constitutional structure does not permit this Court to 'rewrite the statute

11  that Congress has enacted.'" *Puerto Rico v. Franklin California Tax-Free Tr.*, 136

12  S. Ct. 1938, 1949 (2016) (quoting *Dodd v. United States*, 545 U.S. 353, 359

13  (2005)). Furthermore, as the Eleventh Circuit explained in *Stansell II*, the

14  statutory construction that Alvarez proposes "would create an absurd result and

15  leave TRIA § 201 nearly meaningless." *Stansell II*, 771 F.3d at 731. "[A]pplying

16  FSIA's definition of agencies or instrumentalities to TRIA would leave only

17  terrorist states as potential sponsors of agencies or instrumentalities under

18  TRIA § 201, eviscerating TRIA's effectiveness vis-à-vis non-state terrorist

19  organizations." *Id.* Such an erroneous result would not comport with the plain

20  text of the statute which unambiguously makes nonstate judgment debtors

21  subject to TRIA execution. *See id.*

22      The so-called "assistance standard," on the other hand, utilizes the plain

23  and ordinary meaning of the terms "agency" and "instrumentality." *See*

24  *Stansell II*, 771 F.3d at 732; *Kirschenbaum v. 650 Fifth Ave. and Related Properties*,

25  830 F.3d 107, 135 (2d Cir. 2016) (for the purposes of TRIA, construing the

26  terms "agency or instrumentality" according to their ordinary meaning),

27

28  [54]    TRIA Motion 13:13–20.

-29-

*abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018). As the Second Circuit explained in *Kirschenbaum*:

> "Instrumentality" is a means through which a function of another entity is accomplished, analogous to a branch of a governing body. *See Black's Law Dictionary* (10th ed. 2014) (defining "instrumentality" as "a means or [a]gency through which a function of another entity is accomplished, such as a branch of a governing body"); *Webster's Third New International Dictionary* 1172 (1993) (defining instrumentality as "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body"); *OED Online*, *Oxford University Press*, June 2016 (defining instrumentality as "[t]hat which serves or is employed for some purpose or end; a means, an agency"); *Merriam–Webster Collegiate Dictionary* 22 (10th ed. 1993) (defining instrumentality as a "means" or an "agency").
>
> "Agency" is an entity acting on another's behalf or providing a particular service on another's behalf. *See OED Online*, *Oxford University Press*, June 2016 (defining agency as "[a] person or organization acting on behalf of another, or providing a particular service"); *Webster's Third New International Dictionary* 1172 (1993) (defining agency as "a person or thing through which power is exerted or an end is achieved"); *Merriam–Webster Collegiate Dictionary* 22 (10th ed. 1993) (defining agency as "a person or thing through which power is exerted or achieved"). As ordinarily understood, an entity that is an "agency" or an "instrumentality" is distinct from, even if a part of, the entity for which the agency or instrumentality is acting.

*Kirschenbaum*, 830 F.3d at 135.

Accordingly, this Court concludes that to demonstrate that Alvarez is an "agency or instrumentality" of the FARC under TRIA § 201(a), Caballero must show that Alvarez: "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, *or* (3) was owned, controlled, or directed by the terrorist party." *Id.* (emphasis in original) (citing *Stansell II*, 771 F.3d at 723); *see also Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2013 WL 12156399, at *2 (M.D. Fla. Apr. 25, 2013), *aff'd sub nom. Stansell II*, 771 F.3d 713.

## III.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Alvarez's Motion Re Blocked Assets is **DENIED**.

2.      Alvarez's Motion Re Judgment is **DENIED**.

3.      Alvarez's Jurisdiction Motion is **DENIED**.

4.      Alvarez's Discovery Motion is **GRANTED in part**, to the extent that Alvarez seeks to take the depositions of Caballero's witnesses regarding the agency-or-instrumentality issue, and **DENIED in part**, to the extent that Alvarez seeks to take Caballero's deposition.  The Court further **ORDERS** that Caballero shall have the right to depose Alvarez's witnesses regarding the agency-or-instrumentality issue.

5.      Caballero's Motion to Compel is **GRANTED in part**, to the extent that Caballero seeks to compel the Alvarez's deposition, and **DENIED in part**, to the extent that Caballero seeks to compel Alvarez to appear for deposition in person in this District.

6.      The Court will conduct an evidentiary hearing on the TRIA Motion.

7.      The parties are **DIRECTED** to confer regarding the timing, sequence, and logistics of discovery; the schedule for further briefing, if any, on the TRIA Motion; and the schedule for the evidentiary hearing on the TRIA Motion.  The parties are **DIRECTED** to file a Joint Status Report no later than 12:00 noon on January 14, 2022, regarding those issues

8.      A video Status Conference is **SET** for 11:00 a.m. on January 21, 2022.

**IT IS SO ORDERED.**

Dated: December 29, 2021



John W. Holcomb
UNITED STATES DISTRICT JUDGE